ᵇ ᵍ

E-FILED
Thursday, 30 May, 2019 11:46:21 AM
Clerk, U.S. District Court, ILCD

TODD FORTIER, #N51882
      Plaintiff,

VS.

Case # 19-CV-2139

JURY DEMAND

ILLINOIS DEPARTMENT OF CORRECTIONS,
WEXFORD HEALTH SOURCES, LAKE LAND COLLEGE,
JOHN BALDWIN, NEDRA CHANDLER, JOHN VARGA,
ASST. WARDEN FASONO, SONJA NICKALAUS,
KEITH STEVENSON, DR. ZAHTZ, DR. LANK,
DR. LUDFORD, DR. O'BREEN, DR. STEVE MEEKS,
ALAN PASLEY, AMBER ALLEN, NURSE TUELL,
NURSE MERSHON, TROY HENDRIX, MAX BLACKBURN,
CHRIS MELVIN, JAMES MARTENS, SARAH JOHNSON,
LT. REMMERS, LT. GONZOLOS, CARLOS FARIAS
AND OFFICER BLACK. Individually and in
their official capacities.
      Defendant's.

FILED

MAY 2 8 2019

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

---5

## COMPLAINT

This action is brought by Plaintiff, Todd Fortier, pro-se, a Blind American with Disabilities
presently incarcerated in the Illinois Department of Corrections. Against the above captioned
Defendant's and alleging that they acting seperatly and in concert in furtheranceooõ
customs, policies and practices designed to save on the cost of Fortier's care and custody
exercised deliberate indifference to the serious needs of his disabling medical conditions
and their related medical complications. Defendant's refuse to provide ordinary and
routine medical care to Fortier. Such as, upon discovering that their prefferred insulin
did not work for his diabetes, refused to substitute insulin. Instead forcing him to
control his diabetes and blood sugar levels viahstarvation. Refusing to treat his end
stage advance Hepatitis C.,and refusing to provide mandate treatment for his advanced
degenarative cornea disease. Their indifference is so deleterious and repugnant, it
condemns him to suffer one or more of the following medically certainnailments. Death,
Heart Attacks, Heart Disease, Strokes, Comas, Liver Cancer, Liver Failure, Eye pain,

Constant Migraine headaches, Nerve Damage and Pain, Limb and Digit Amputations, among many other things. Defendant's actions are so deliberate, reckless, willful and wanton it can be termed ~~technical attempted murder~~

Also, Fortier a blind inmate has been denied participation in IDOC, Wexford Health Sources and Lake land College, medical, educational, work, rehabilitational and early release programs and services soley because of his disability in violation of the ADA and RA.

Moreover, Defendant's have a custom, policy and practice of denying Due Process of Law in the review of grievances and complaints in order to conceal the unlawful conduct of IDOC Staff and it's Agents and in promotion of these practices and policies they denied Fortier his constitutional rights to fair and impartial hearings for his aproximate fifty (50) grievances and complaints All of which were properly file between the years of 2011 until 2019. However, Fortier has not receive even a minimal amount of resolution of his complaints of continual violations to his constioutional and civil rights, only retaliations by those charged to protect and guarantee them.

<u>JURISDICTION AND VENUE</u>

JURISDICTION

This Court has Jurisdiction over Plaintiff's Claims of violations of Federal and Constitutional Rights under 42 U.S.C. §§ 1331(a) and 1343 and claims of violations of the Americans with Disabilities and Rehabilitation Acts under 42 U.S.C. § 12101 et seq. and 29 U.S.C. § Sec. 504 and 794.

This Court has supplemental jurisdiction over Plaintiff's State Law Claim under 28 U.S.C. § 1367

VENUE

Venue properly lies in this Court pursuant to 28 U.S.C. Sec. 1391(b1)(b2). Defendant's have acted and continue to act under color of state Law at all times relevant to this complaint

## Case # 15 C 1591 and Appeal # 16-3571

Plaintiff filed a lawsuit against the Terani Law Firm, Whereupon the cause was dismissed for failure to established federal diversity jurisdiction upheld on appeal.

## Case # 17-CV-06050

Plaintiff filed a 28 U.D.C.A. §2201 complaint seeking a Declaratory Judgemnt against Judge Norge and Clerk Bruton and recieved a *PLRA Strike.

On 10-16-18 Plaintiff filed a FRCP Rule 60 motion to vacate and set aside PLRA Strike, argueing that 28 USC § 1915(g) does not authorize the application of PLRA Strike for s for seeking a declaratory judgment against a judge and therefore Defendant's were not immune . * Still pending.

Plaintiff Fortier avers that he has be assigned only one(1) strike under PLRA and that strike is being appealed as improperly applied.

## FULL EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff Fortier avers that he has fully exhausted all claims of constitutional and civil right violations through the grievance processes made available and required by the Illinois Department of Correction and has attached documents in support as Exhibits and further referenced in complaint.

---

Ft.Nt.1    Plaintiff respectfully seeks the Court's  indulgence in understanding that because of his blindness and the methods that must be used in preparing this complaint it may appear to be overly explainatory. May the Court be assured that absent some redundancies the complaint details allegations that span form May 2011 until present day 2019.

Ft.Nt.2    Plaintiff has supplied under separate cover two(2) packets of exhibits in supports of complaint. One(1) that of Medical Records and one(1) of grievances, complaints and letters and; reference in complaint where appropriate.

ALLEGED VIOLATION OF LAW

## COUNT I

### CONSPIRACY

Defendants in promoting pratices, policies and customs designed to save on the cost
and limit their responsibilities to provide Plaintiff's Medical Care, Rehabilitation,and
Education, while he is in the custody of Illinois Dept. of Corrections. Acting separately
and in concert did violate the Due Brocess and Equal Protection Clause of the U.S.
Constitution. Where they denied him fair and impartial hearings in his aprx. fifty(50)
grievances and complaints in order to conceal the numerous violation of Plaintiff's :
Constitutional and Civil Rights in furtherance of said cost saving goals. To wit;

   a. violations of the Health Insurance Portability and Accountability Act.

b. b. failure to create grievance procedures and methods of delivery of
grievance to designated persons having the only authority to resolve complaints
against certain staff and agent. in

   c. use of unauthorized person to resolve grievances.

   d. use of sophistry, false narratives, fabricated evidence, changes in
nature of and ignoring allegations of grievance in order to deny complaints.

   e. refusal to allow the grievance officer's decision to be appealed
only his or hers denial. inaccuracies and falsehoods are not allowed to be pointed
out and refutted.

## COUNT II

### AMERICANS WITH DISABILITIES AND REHABILATION ACTS

Defendant's violated Plaintiff rights as a Blind American with Disabilities secured
under the ADA and RA. where they;/

   a. Denied or restrected his participation in programs and services.

   b. Refused to make inexpensive and reasonable accommendations, which would
allow him to participate in Vocactional and Correctional Industries programs and
services and thereby earn his early release from prison.

   c. Refusal to provide inexpensive auxillary devices and visual aids that
would have improve his quality of life and would have allow him to no longer rely
on the kindness of violent inmate assigned as his aids, and devulge personal

4

and private information to same just to effect outside communications.

      d.    Denials of specific ADA services led to permanent physical injury.

      e.    Misappropriation of funds.

## COUNT III

### DELIBERATE INDIFFENCE TO SERIOUS NEEDS OF MEDICAL CONDITIONS

Defendant's have been and are in promotion of a policy and practice to save on the cost of care and custody of Plaintiff, exercise diliberate indiffernce to to the serious medical needs of his diagnosed medical conditions and their related medical complications.

Furthermore, Defendant's in denying medical treatments willfully and wantonly and repeatedly endanger his life, health and safety and causing him to unnecessarily suffer pain and injury to vital organs.

## SUBCOUNT A

### KERATOCONUS TREATMENT

Defendant's have been and are deliberately indifferenct to the serious medical needs of Plaintiff degenerative eye disease Keratoconus (KC) and it's related medical conditions. where they;

      a.    deny or delay access to medical specialists qualified to treat KC and refusing to carry out specialist reccommendations.

      b.    denying or delaying prescribed medical treatments and prescriptions.

      c.    Requiring Plaintiff to pay for prescriptions

      d.    refusing to provide medical treatments or medical devices prescribed for diagnosed conditions and needed to stop pain and suffering.

## SUBCOUNT B

### DIABETES TREATMENT

Defendant's have been and are deliberately indifferent to the serious medical needs of Plaintiff's Diabetes and it's related medical conditions in a manner so repugnant and deleterious tht it can be termed technical attempted murder and subjects him to one or more of the following medically certain outcomes. i.e. death, strokes, heart attacks, heart disease, limb and digit amputations among many other things. Where they;

      a.    Took Plaintiff an insulin dependant diabetic for aprx. twenty(20) years off insulin entirely simply because the type used was ineffective and to provide effective insulin would cost more is a medical judgment so bad it's not medical

      b.    implementing and restricting Plaintiff's diabetic medical treatment soley to save costs, without medical examination or needs accessment is a deleterious medical decision based on non medical factors.

      c.    Using nurse Practictioners as primary health care providers to treat . Plaintiff's diabetes and using licensed physicians as rubber stamp authorizers of nurses diagnosis and prescriptions. Denied him excess to qualified Doctors for aprx. eight(8) years and cause him injury and harm to his life and health.

      d.    refusing to provide treatment for diagnosed medical conditions. e.g. diabetic gum disease, diabetic neuropathy and foot injuries.

      e.    refusing to provide prescribed medical treatment and medical care unless and until Plaintiff payed entire cost of care.

## SUBCOUNT C

### HEPATITIS C TREATMENT

Defendant's have been and are deliberately indiffernt to the serious medical needs of Plaintiff's end stage advanced degenerative liver and blood disease Hepatitis C. and it's related medical conditions in a manner so repugnant and deleterious that it can be termed technical attempted murder and subjects him to one or more of the following medically certain outcomes. i.e. Death, liver disase, liver cancer, scorosis of the liver and painful side effects. Where they;

      a.    refused to provide the approved cure/treatment for his end stage Hep C. for non-medical reasons.

      b.    failure to treat his Hep C. before it reached it's end stage of fibrosis level four(4) is a medical judgment or decision so repugnant it can not be called medical.

      c.    refusing to cure/treat his Hep C-for no other reason than tuasave the cost of care. unnecessarily risk his life.

## COUNT IV

### RETALIATION

Defendant's have been and are retaliating against Plaintiff for exercising his right to seek redress through complaints and grievances to resolve allegations of unlawful conduct. They have unjustly punished and caused him harm in violation of the first(1st) Amendment to the U.S. Constitution. Where they;

  a. deny Plaintiff any participation in IDOC programs and services, which they have allowed toher disable inmates to participate in.

  b. intentionally deny medical services, educational, rehabilitational, work and recreational programs and services they allw all inmates to participate in.

  c. intentionally deny Plaintiff an opportunity to participate in IDOC's less punitive programs and services. e.g. transfer to lower security facilities, communittee transitional program assignment and home monitering.

  d. denial of participation in early release programs and receiving good time credits.

  e. confiscation of authorized property.

### COUNT V

### WILLFUL AND WANTON CONDUCT

### INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS (IIED)

Moreover, Defendant's in doing the things alleged in this complaint acted deliberately, wantonly, willfully, recklessly and maliciously. As a result they caused Plaintiff to suffer extreme emotional distress and public and general injuries.

7

## PARTIES

1.  Plaintiff Todd Fortier is and was at all times relevant hepete; a prisoner and American with a disability. Who suffers from Blindness, Diabetes, Hepatitis C, and Mental Illness and is incarcerated in the Illinois Department of Correction at it's Dixon Illinois facility ("Dixon").

2.  Defendant Illinois Department of Corrections ("IDOC") is a state of Illinois gen Agency charged with confining those sentenced to temrms of imprisonment under Illinois law. It receives Federal and State funding.

3.  Defendant Wexford Health Sources("Wexford") is a Pennsylvania Company doing business in Illinois contracted by IDOC to provide medical and mental health care in it in it's correctional facilities. Receipt of Federal funds is unknown.

4.  Defendant Lake Land College ("Lake Land") is an Educational Institution contracted or retained by IDOC to provide educational programs and services in over twenty(20) of it's correctional facilities. At all relevant times hereto it had a so-called campus a Dixon C.C. and provided educational programs and services to the incarcerated. It receives Federal funds.

5.  Defendant John Baldwin is and was the action Director of IDOC at all times relevant hereto and exercised supervisory authority, and control over all IDOC facilities employees and entities operating in IDOC under contracts.

6.  Defendant Dr. Steve Meeks is and was IDOC's Agency Medical Director/Chief of health Services. Who at all times relevant hereto was the ombudsman overseeing IDOC's Medical Staff, Wexford and Inmate Medical Services.

7.  Defendant Nedra Chandler was at all times relevant hereto the Warden and chief Executive Officer of Dixon Correctional Center.

8.  Defendant John Varga was and is an employee of IDOC. Who at all times relevant hereto was the Warden and Chief Executive Officer of Dixon C.C.

9.  defendant Fasano(first name unknown) was at all times relevant hereto the Assistnat warden of Programs at Dixon C.C.C

10. defendant sonja Nickalaus is an employee of IDOC. who at all times relevant hereto was Assistant warden of Programs at Dixon C.C.

11. Defendant Alan Pasley is an employee of IDOC. Who at all times relevant hereto was the ADOC Programs Compliance Admisinstrator/ADA COOrDiNaTOR.

12. Defendant Keith Stevenson is an employee of Lake Land College. Who at all times relevant hereto was the associate Dean of Lake Land's Dixon C.C. campus.

13. Defendant Max Blackburn is an employee of IDOC. Who at all times relevant hereto was the American with Disabilities Coordinator("ADA") at Dixon C.C.

14. Defendant Troy Hendrix is an employye of IDOC. Who at all times relevant hereto was the American with Disabilities Coordinator at Dixon C.C.

15. Defendat Amber Allen is an employee of IDOC. Who at all times relevant hereto was the Health Care Administrator at Dixon C.C.

16. Defendant Dr. Lank(first name unknown), is a Physician employyed or retained by Wexford Health Sources. Who at all times relevant hereto provided medical services at dixon C.C.

17. Defendant Dr. M. Zahtz is a Physician employeed or retained by Wexford Health sources. Who at all times relevant hereto provided medical services at Dixon C.C.

18. Defendant Dr. O'brien (first name unknown) is a Dentist employeed or retained by Wexford Health sources. Who at all times relevant hereto provided medical/Dental services at Dixon C.C.

19. Defendant Dr. Ludford (first name unknown) is an Optomotrist employeed or retained by Wexford Health Sources. Who at all times relevant hereto provided medical services at Dixon C.C.

20. defendant S. Tuell is a Nurse Practitioner employeed or retained by Wexford Health sources. Who at all times relevant hereto provided medical services at Dixon C.C.

21. defendant K. Marshos is a Nurse Practitioner employeed or retained by Wexford Health Sources. Who at all times relevant hereto provided medical serviaes at dixon C.C.

9

22.   Defendant Chris Melvin is an employee of IDOC. Who at all times relevant hereto was the supervisor of IDOC's Correctional Industries at Dixon C.C.

23.   Defendant james martens is an employee of IDOC. who at all times relevant hereto was the Grievance Officer at Dixon C.C.

24.   Defendant sarah Johnson is an employee of IDOC. Who at All times relevant hereto was the IDOC's Administative Review Board's grievance appeal officer.

25.   Defendant Remmers (first name unknown) is an employee of IDOC. Who at all times relevant hereto was a correctional officer with the rank of lieutenant, assigned as chairman of the disciplinary adjustment committee at Dixon C.C.

26.   Defendant gonzoles ( first name unknown) is an employee of IDOC. Who at all relevant times hereto was a correctional officer with the rank of lieutenant at Dixon C.C.

27.   defendant Carlos farias is an employee of IDOC. Who at all times relevant hereto was a correctional officer assigned as programs disciplinary hearing officer at Dixon C.C.

28.   Defendant Black ( first name unknown) is an employee of IDOC. Who at all times relevant hereto was a correctional officer and SORT team memer for IDOC stationed at Dixon C.C.

## FACT ALLEGATIONS

29.   On or about May 20, 2011 Plaintiff was remanded into the custody and care of Defendant Illinois department of Corrections ("IDOC") pursuant to a sentence of eighteen (18) years.

30.   Plaintiff asserts that at the time of his remand into IDOC's custody he was a Blind American with Bisabilities and suffered from the following chronic medical conditions. To wit;

      a.   Advanced Kerataconus in right eye and no left eye and related conditions
      b.   Daibetes and it's related medical complications, gum disease, neuropathy inter alia
      c. Hep C and it's related medical conditions
      d. Mental Illiness. e.g. depression, anxiaty and personility disorder.

31.  Plaintiff asserts that per his primary health Care Physicians orders of
10-2010, given at south Suburban Hospital. the course of treatment for his daibetes
wa a six(6) shot a day regimen of three shot of lantus(sic) and three(3) shots of
hemaglob(sic). One of each before each meal.

32.  Plaintiff alleges that Defendants' IDOC, Wexford, their medical staff have
a cost saving practice and policy. that diabetics committed to their care are placed
on a two(2) shots insulin regimen of NPH and R. One shot pre-dawn and one(1) shot
pre-dusk, without examination or tests to determine medical needs

33.  On or about June 11, 2011, Plaintiff was transferred to IDOC's Dixon C.C.
("Dixon") and briefly housed in the Health Care Unite("HCU") and give an IDOC/Dixon
oreintation manual ( See Exhibits  A1, A2, A3 and A4 )

34.  On or about June 12, 2011 Plaintiff asserts that he was moved into dixon's
non-hadicap accessable living area and given a previously unknown inmate as a so-called
ambulatory aid. Plaintiff was required to depend on the kindness of not only the aid
but other inmatesin order to successfully complete most daily tasks.

35.  Plaintiff alleges that he is a qualified American with a Disability, Defendants'
IDOC, Wexford and their staff and agents capreciously and arbitrarily refused to move
him into the cells located on the second(2nd) and thrird(3rd) floors of the HCU.
Those cells are of the type and configuration mandated for the disabled by the ADA.
( See exhibits B1 and B2)

36.  Plaintiff Alleges that the so-called physically challenged cells are arbitrarily
given to inmates in protective custody, wheelchair bound, ambulatory and some blind

37.  Moreover, Plaintiff asserts that Defendant IDOC maintains information centers
and computor web pages detailing to the public it's compliance with the Amerioans with
Dixabilities Act (ADA) and rehabilitation Act (RA). specifically, detailing the
accomendation and devices and methods of effective communication it provides to Blind
persons in it's custody. ( See Exhibits C1 and C2 )

38.  Plaintiff asserts that being housed in the same manner as the non-disable

11

extreme limitations were place on his life activities and quality of life he enjoyed. the basic functions that othersperform easily he could not do without assistance from his aid and the kindness of other inmates.

39    39. Plaintiff alleges that Defendants' policies towards him as a disabled person caused him harm. e.g.  injuries suffered because the non-disabled cells are small two(2) man, stack bunk style without ladder. Therefore, area to toilet and door is block as boxes and shelving are to climb top bunk. Also, he was required to give inmates his personal, private and family information in order to effect communication.

40.  On or about June 15 2011 Plaintiff asserts that in attempto obtain a better more independent quality of life. Plaintiff wrote Defendant Hendrix asking for items needed to lessen the pain caused by his Blindness, ADA accommendations . ( See Exhibit D )

a.   Placement in ADA cell              B.  sunglasses for photophobia
c.   Magnifiers and or CCTV              d.   Talking book player

41.  Plaintiff alleges that he was restricted from participation in Defendant IDOC's educational and rehabilitational programs and services. Where participation in these programs and services are restricted unless and until inmates take the TABE test. IDOC provided no method for blind inmates such as Plaintiff to take the test for aprx. five(5) years.

42.  Plaintiff alleges that Defendant's IDOC and hendrix denied him participation in the voice mail programs for the blind for aprx. two(2) years. eventhough, his blindness was a matter of long standing correctional and medical records.

43.  On or about 10-23-11 Plaintiff asserts that he filed Emergency ＃1 grievance # 11-10-181 directly to Defendant's Chandler and hendrix alleging the deliberate indifference to the serious medical needs of his disability and failure to provide disability accommendations. ( See Ex. E1, E2 and E3 )

a. On 11-22-11 Defendant Chandler denied grievance Emergency status
b. On 12-1-11 Defendant hendrix reponded to g ie
c. On 1-25-12 Defendant Martens denied ADA grievance
D on or about 11-27-12 Plaintiff recieved the obove response in coreectional mail.

12

44. On or about 11-20-11 Plaintiff filed an identical grievance to grievance #
11-10-181 Directly to Defendants IDOC's Director Godinez and ADA Coordinator McKenzie
pursuant to Illinois law and due to Defendant Chandler and Hendrix's refusal to
resolve allegations of denial of rights ( See Exhibits E4, E5 and E3 )

    a. on or about 11-27-12 Plaintiff received Defendants IDOC's ARB refusal
to hear grievance in the Correctional mail.

45. Plaintiff alleges that Defendants' IDOC, Wexford, those employee and or retained
by them did for aprx. two(2) years of being charged with the care and custody of Plaintiff
were deliberately indifferent to the medical evidence and facts that thier treatment
for his diabetes was ineffective and as a result his blood sugar levels were dangerously
increasing and that his Hep C should be cured.

46. Plaintiff alleges that the before mentioned Defendants', IDOC, Wexford, Chandler
Hendrix, Martens and others. In furtherance of theepolicy and practice of cost savings
on the care and custody of Plaintiff did for the periods of May 2011 uprto January 2013.
did knowingly and intentionally cause him to suffer extreme pain and subjected him
to an infantile quality of life. Sherein They:

    a.    Were deliberately indifferent to the serious medical needs of his Diabetes,
Hep C. Kerataconus and thier related medical conditions.

    b.    refused to provide reasonable and inexpensive accommendation for his
diability and prohibited and or restricted his participation in programs and services.

    c.    refused to hear properly filed grievances.

    d.    falsely denied Plaintiff's blindness.

    e.    denied his right to a fair and impartial grievance process, woutinely
used fabricated evidence and rationales, using unauthorized persons to hear grievances.

47. Plaintiff alleges that the before mentioned Defendants' not only cause him
harm. thier concerted acts of misconduct violated his protected civil and constitutional
rights. e.i.

    a.    American with Disabilities and Rehabilitation Acts.

    b.    1st, 8th, 14th Amendment of the U.S. Constitiontion

    c.    Health Insurance Portability and Accountability Act (HIPAA)

    d.    Illinois statutes and common law

48. Plaintiff alleges that the violations to his constitutional and civil rights at the hands of Defendants' IDOC, Wexford, thier employees and those acting under thier control continued into the future and became more egregious.

49. on or about 1-26-13 Plaintiff allegs that discriminated against and punished solely based on the limitations of his blindness and and the refusal of numerous request for accommendations to be made concerning the very thing he was written a disciplinary ticket for, i.e. unmade nbed and medication no in property box. ( See Exhibit F)

50. On or about 4-15-13 Plaintiff asserts that he filed ADA grievance # 13-4-142 to Defendant Hendrix alleging the continual denial of medical treatment for the serious medical needs of his disability and refusal to make need accommendation for his Disability. ( See Exhibits G1, G2 and G3 )

     a. On or about May 1, 2013 Defendant Hendrix answered grieavnce, Defendant Chandler concurred with decision.

     b. On March 13, 2014 Defendant Johnson denied grievance as appropriately addressed by Institutional administration.

51. On or about 5-15-13 Plaintiff asserts that he sought Mental Health counseling with Dr. Gavoli at Dixon C.C. due to the emotional distress caused by what he perceived as the extremely dangerous lack of medical care for his degenarative eye disease and the disability discrimination and punishment he was made to endure.

52. On or about 6-9 and 6-17-13 Plaintiff asserts he again wrote to Defendants' Chandler and Hendrix concerning the delay in receiving promise medical care, deliberate indifference to serious medical needs and ADA discrimanation and punishment experienced at Dixon C.C. Defendants did not respond to letter of complaint

53. On or about 6-18-13 Plaintiff asserts that he was seen by Dixon's Optometrist Dr. Hicks and complained of extreme eye pain, migraine headaches, eye infections and swelling of the eye. Also, he inquired about the the fifty(50) day delay in seeing an Opthomologist

14

54.  On or about 7-3-13 Plaintiff asserts that after long delays he was sent out to the University of Illinois(UIC) eye Clinic where Ophthalmologist determined that he was legally blind. As Dixon C.C.'s Dr.Hicks and numerous IDOC And Wexford medical staff found over the preceeding years. ( See Exhibits MED REC 1½)

55.  On or about 8-8-13 Plantiff asserts that Defendant Hendrix allowed him limited ADA accommodations. i.e. Talking book and voice mail for six(6) months only. ( See Exhibit H )

57.  On or about 8-16-13 Plaintiff asserts that nothwithstanding his disability he identified several job assignments in Dixon's optical lab/correctional industries. that he could perform with little or no accomodations. Plaintiff wrote to Defendant Melvin to request placement in Industries and submitted an application wherein his disability was fully disclosed. ( See Exhibits I1 and I2 )

58.  On or about 9-4-13 Plaintiff asserts that he received a letter acknowledging his application and placement on a secret waiting list. ( See Exhibit I3 )

58.  Plaintiff alleges that Defefendant Melvin in an act of ADA discrimination did not call him over for an interview or assign him in the optical lab as he would have done with other inmates that were within seven(7) years of thier outdates/release,

59.  On or about 9-16-13 Plaintiff assers that he wrote a letter of complaint alleging deliberate indifference to serious medical needs and and lack of any meaningful ADA accommendations. ( See Exhibit J1 )

60.  Plaintiff alleges that Defendants' Chandler and Fasano by not investigating his complaints and relying on the medical staff justification of their own action. Only unnecessarily prolonged and increase his pain and suffering. Also, they did not address his ADA concerns. ( See highlighted and added parts of Ex. J1 made by unknown person)

61.  Plaintiff asserts that one of his diabetes related medical conditions and or complications is aggressive chronic gum disease. The symptoms are mouth and gum pain, bleeding gums, destruction of the underlying bones that support teeth and finally tooth lost. The prescribed treatment is frequent teeth cleaning.

15

62. On or about 10-23-13 Plaintiff asserts that he filed grievance # 13-10-165 alleging , that according to Defendant O'Brien Dixon's HCU Dentist, he was being denied any treatment for his hix chronic and persistent diabetic gum disease and the resulting pain, tooth loss and suffering. Also, pursuant to a policy and practice in order to obtain replacement denture needed for the inevitable tooth loss, proper chewing and digestion. Plaintiff would have to pay the entire cost. ( See Exhibits K1, K2 and K3

    a.    Defendant IDOC, Chandler and others have no named facility privacy-officer or disclosed any HIPAA procedures for handling medical issues and grievances.
    b.    On 2-11-14 CCII Zoedlo responded to grievance simply stating that Dixon's HCU has no dental hygenist to perform the medical treatment.
    c.    on 3-21-14 Defendant Martens denied medical grievance and furthermore gave medical advice on how Plaintiff could treat his chronic medical condition
    d.    On 8-26-14 Defendants' ARB refused to hear grievance as untimely filed no denial dates and HCU visits dates.

63. Plaintiff asserts that his chronic persistent diabetic gum disease is not an eposidic medical condition. the need for treatment is continual and the denial of it, yeaterday, today and tomorrow is a contdnual violation of Plaintiff's Constit and civil rights.

64. Plaintiff alleges that Defendants' IDOC, Wexford, Chandler, O'brien, Martens and others, have in furtherance of the cost saving policy and practice, denied Plaintiff's needed medical treatments, inacted an extortion scheme and engaged in concerted misconduct to coceal their violation of constitutional laws.

65. On or about 1-10-14 Plaintiff asserts that as a direct result of being requested to Dixon's non-disabled living area, forced to walk aprx 1/2 mile of slippery ice, snow and wet grounds, he permantly injured his back due to a fall that was the daused because of being denied disability transportation( so-called 106)

66. On or about 1-12-14 Plaintiff asserts that he simultaneousely filed an emergency and ADA grieavance # 14-1-92 and 14-2-111 directly to Defendants' Chandler and hendrix, alleging a serious and permament injury caused by disabiljty discrimination

and denial of ADA accomodations. ( See Exhibits L1, L2,and L3 )

      a.   on 1-17-14 Defendant Chandler denied grievance emergency status

      b.   On 2-20-18 Defendant Hendrix respondied to grievance sting the Plaintiff was moved to health care per his request. Defendant Chandler concurred

      c.   On 8-22-14 Defendats' IDOC's ARB combined grievance # 14-1-92 with grievance # 14-4-82, using opposing and alternative reasoning to deny the seperate and distinct subject matters contained in them.

67.  On or about 2-14-14 Plaintiff asserts that he simultaneously filed Grievance # 14-3-31 alleging disability discrimination and retaliation by Defendant Fasano. In that Fasono had STC assigned Sgt irwin leave his mental health facility assignmemtnand confront Plaintiff with the message from Defendant Fasano that he was not to receive any handicap consideration or accommodations. Thds Message was delivered in a loud loud and hostile voice, under the threat of issuance of an IDR. ( See Exhibits M1, M2, M3 and M4)

      a.   On 2-20 and 2-24-14 Defendant Chandler denied grievance emergency status.

      b.   On 2-21-14 CCII Law responded to allegation stating that Defendant Fasano admitted allegations and Plaintiff had been moved to HCU 3rd Fl.

      c.   On 3-4-14 Plaintiff resubmitted grievance to Defendant Hendrix

      d.   On 6-12-14 Defendant martens denied ADA grievance stating Sgt. Irwin admits Defendants' Fasono's direction but denied hostility and combines ADA cell placement with ADA grievance 14-4-82. Defendant Chandler concurred

      e.   On 12-30-14 Defendant Johnson of ARB changed the subject matter of grievance and flound that issue was appropriately addressed by facility Administation.

68.  On or about 2-19-14 Plaintiff asserts that he was moved into an ADA/Physically challenged cell on the 3rd fl HCU.

69.  On or about 3-23-14 Plaintiff asserts that he wrote to Defendant Hendrix that requesting that he use some of the alotted federal funds to improve his quality of life with inexpensive auxillary devices and AIA accommondation like effective communications devices and talking watch and etc. ( See Exhibit N )

17

70. On or about 4-3-14 Plaintiff asserts that Defendant Fasano came to his assigned cell on the 3rd fl HCU and inform him that he was being moved out of the ADA/physically challenged cell he was presently housed in back to the non-disable area of the prison because he no longer met the criteria. upon learning that out of the aprx. hundred and twenty (120) inmates being housed in ADA cells he was the only one being moved, he promptly declared a hunger strike. In order to draw attention to the ADA retaliation.

71. On or about 4-9-14 Plaintiff asserts he filed an ADA grievance # 14-4-82 with Defendant hendrix alleging ADA discrimination and retaliation in the form of a amove from an ADA cell by Defendants' Fasano and agents of Wexford, acting in concert to retaliate against me for complaining about denial of his rights under the ADA and failure to treat his serious medical condition. ( See Exhibits O1, O2 and L3 )

a. On 4-22-14 Defendant Hendrix responded to grievance, ignored the 2nd allegation of ADA retaliation by Defendant Fasano and others and inferred that Plaintiff's Blindness was no different than inmates who wear glasses living in general population. Also, that HCU cells are designed speciffically for wheelchair offenders.

b. On 9-22-14 Defendant Johnson combined grievance 14-4-82 with 14-1-92 combined the response and made a long rationale to deny the separate allegations, persons involved and subject matter and claim of unlawful conduct. Cheery picking from the allegations, in order to create a narrative upon which a denail ofgrievances could be based.

72. On or about 5-8-14 Plaintiff asserts that after an aprx. one (1) years delay from the day of Doctor's requests that he been seen by an Ophthalamologist. Plaintiff was seen by a University of Illinois(UIC) Cornea Clinic whereina doctor recommended a that he have a cornea transplant. ( See Med. Rec 14A)

73. On or about 5-20-14 Plaintiff asserts that he saw Dr. Gavoli, Dixon's Mental health Doctor and sought help for the emotional distress, paranoria, anxiety,fear, panic, and depression he was experiencing as a result of the Defendants' refusal and or failure to improve the quality of life, teat his serious medical conditions and make inexpensive accomodations so that he could participate in programs and services.

18

74. On or about 5-21-14 Plaintiff asserts that he received Defendant Wexford's denial of Medical doctor's recommendation that he receive an cornea transplant. This denial was read to him by an inmate.

75. On or about 7=7=14 Plaintiff asserts that he filed an ADA GRIEVANCE #14-7-79 to Defendant hendrix abheging ADA disparate and discriminatory tratment in Correctional programs and services, delays in sending him out for medical treatment and consultions by outside doctors, refusal to treat the painful complications of eye disease, denial of cornea transplant, and racial discrimination ifl disemenation of medical care at dixon C.C. ( See Exhibits P1, P2 and P3 )

    a. Defendant Hendrix turned grievance over to CCII zedlo

    b. On 7-10-14 CCII zedlo  responded stating that Plaintiff is receiving on goinng tr treatment and all treatment must be ordered by Medical Doctor not not a matter of  inmate preference..

    c.  on &-15-14 grievance resubmitted to Defendant Martens through CCII Zedlo

    d.  grievance remains unanswered

76. On or about 7-27-14 Plaintiff asserts that he filed an ADA grievance  to Defendant hendrix alleging the continual violations of his ADA rights, dangers and consirquencesof forcing a blind person to live among the non-disabled and compete for services and programs. the resulting mental distress and the deliberant indifference to the limitations of his disablity and resulting discriplinary tickets and retaliation. ( See Exhibits Q1, Q2, Q3 and Q4 )

    a.  neither the facility ADA Coordinator nor the Facility Privacy/HIPAA Officer reponded to grievance.

    b.  On 7-29-14 Defendant Martens refused to hear grievance stating issue previously grieved.

    c.  On 8-15-14 resubmitted to Defendant Chandler.  remains unaddrressed

    d.  On 10-26-14 resubmitted to Defendant Hendrix, along with letter. remains unaddressed

77. Plaintiff alleges that Defendants' IDOC, Wexford, Chandler, Fasano, Johnson, Hendrix, Melvin, Martens and other knowingly engage in conduct that further violates Plaintiff's constitutional rights to a fair and impartial grievance process. When refuse

to address new date specific grievances that allege continual violations of his ritghts, including new details and new harms.

78. On or about 9-7-14 Plaintiff asserts that he filed an Emergency grievance 14-9-110 to Defendant chandler alleging new incidents of refusal to treat his serious medical condition and the resulting pain and suffering, HIPAA violationsand including the denial to provide doctor's Ordered cornea transplaint and all other allegations and complaint that remained unaddressed by Defendant Martens in the 7-7-14 grievance. ( See Exhibits R1, R2 and R3 )

a. Neither the Facility ADA Coordinator nor the Facility Privacy/HIPAA Officer responded to grievance.

b. On 9-15-14 Defendant's New Warden act Dixon granted emergency status to grievance.

c. On 10-9-14 OCII Knauer denied grievance stating, treatment must be ordered by the facility Medical Practitioner and not a matter of inmate preference.and that grievance officer has no authority to evaluate clinical decisions mabe by licensed physician. Also, report restated that cornea transplant was denied and Dr. Shicker is evaluating cornea situation.

d. On 11-23-14 Defendanr'a ARB denied grievance stating that issue was appropriately addressed by Facility administration.

79. On or about 9-22-14 Plaintiff asserts that he filed an ADA grievance # 14-10-48 to Defendant Hendrix alleging ADA disparate treatment in accommodations, Plaintiff a blind inmate is required to use an antiquated method of comminication(cassette tape), has no evening or weekend aids, denial of participation in educational and recreational programs and services. ( Se Exhibits S1, S2, and S3)

a. On12-18-14 ADA Coordinator Barnhart responded to grievance stating that that the method of voice mail used by Dixon is cassette tapes and end result, being the production of soond is the end is the effectiveness or ability of someone to hear the mail was not address.The denail of programs and services was not addressed. The thnd laqk of adequate assistance was addressed by ollowing the peresent aid to work non-stop. Other effective communication methods was denied.

b. On 7-16-15 Defendant's ARB denied grievance stating that issue was appropriately addressed by the facility administration.

20

80.    On or about 12-23-14 Plaintiff asserts that filed an emergency grievancance directly to Warden Enlow, alleging ADA discrimination, violations of HIPAA and staff misconduct, wherein c/o Johnson on numerous eccassions interfered with Plaintiff's medical care, ignored ADA accomodations offorded him or the lack thereof. Wrote four(4) disciplinary tickets against him. ( See Exhibit T )

       a. On 1-14-15 Warden Enlow denied grievance emergency status.
       b. On 1-20-15 Plaintiff resubmitted grievance
       c. <u>grievance remains unaddressed</u>

81.    Plaintiff alleges that Defendant IDOC, it's employees and agents are in violation of the first(1st) Amendment of the Constitution and HIPAA where they have not created a procedure in which madical grievance can be filed with IDOC's designated medical Ombudsman. where complaints against IDOC's contracted medical providers can beresolved by a medical proffessional, who has equal credentials to the person(s) named in the grievance. Instead of requiring Plaintiff to waive medical privacy and give medical information to non-medical staff. Who admittedly have no power or authority to resove mical issues and simply rely on the accuser(s) to settle grievance.( See Exhibit R2)

82.    Plaintiff alleges that for all times incompassing the years of 2013 and 2014, Defendants' IDOC, Wexford, Chandler, Fasano, Johnson, Hendrix, Melvin, Martens and others. Did in furtherance of a policy and practice to save on the cost of care and custody of Plaintiff, did knowingly and intentionally continue to cause him extreme pain and sufferring and violate his constitutional and civil rights. To wit;

       a. numerous wiolation of the 1st, 8th and 14 Amendments to U.S. Constitution
       b. numerous violations of the ADA and RA
       c. numerous violations of the HIPAA

83.    Plaintiff alleges that the wiolations of his righhs did not cease but became more compounded and egregious as his disability and medical needs increased.

84.    On or about 1-6-15 Plaintiff asserts that after being in Defendant IDOC's care and custody for aprz. four(4) years hw was given a talking watch and was able to know time without inmate assistance. ( See Exhibit U1)

85.    On or about 1-12-15 Plaintiff asserts that he wrote ADA Coordinator C. Barnhart and again expressed his desire to be given an effective method of communicating with friends and family. Other than the antiquated and useless cassette tape voice mail ( See Exhibit U2)

86.    On or about 2-9-15 Plaintt asserts tha hw was given a typewriter as an ADA accommodation and effective method of communication. However, the supplying of essential operating equipment was denied and he was tod that he would have to purchase the needed item at commissary at his expence ( See Exhibits U3 and U4 )

87.    Plaintiff asserts that for the periods incompassing the Year of 2015, he sought and was denied medical treatment for his serious medical conditions and their related medical complications and relief from the resulting pain and suffering. e.g.

| | | | |
|---|---|---|---|
| a, | 4-23-15 with Dr. Baltista | b. | 5-13-15 P/A Dyer |
| c. | june 2015 sick call | d. | 7-6-15 sick call |
| e. | 7-31-15 sick call | f. | 8-6-15 sick call |
| g. | 8-18-15 Dr. Chanberlain | h. | 9-10-15 Dr. Chamberlain |
| i. | 9-13-15 P/A Caruso | j. | 9-22-15 Dr. O'Brien "Dentist" |
| J. | 10-13-15 Dr. Chamberlain | | | |

( See medical records labeled, Medical Records Chronic Care Clinics "MRCCC" and Med.Dental "Med. Dent"= Med.Dent 1 and 2, MRCCC 14A1 thru 4, 14B, 15A, 15B, 15C, 15D1-2, 15E, 15F1-2, 15G, 16A1-s, 16B, 16C1-2, 16D )

88.    On or about 3-17-16 Plaintiff asserts that after aprx. five(5)years the pain, suffering and discomforts associated with lack of medical tratment of empty eye socket and prosthetic maintenance relieved by the replacement of problematic old prosthetic. However, April 2014 UIC reccommendations **that** the medical procedures be perform was delayed for aprx. one(1) year and the reccommendation that he see a neurologist was ignored. ( See Exhibits MRCCC 14A1 thru A3 and 15G)

89.     Plaintiff alleges that Defendants' Dr. Zahtz, Dr. O'Brien, Tuell, Mershon and others were deliberately indifferent to the serious medical needs of his diabetes, hep c, and ther related medical conditions i.e. they ignored the warning signs of immenent and or possiblility of Plaintiff suffering a heart attack, stroke,liver cancer, liver failure, sclerosis of liver, limb amputations, painful neuropathy and gum disease. That was evident by his high and increasing A1C and blood sugar levels and increasing fibrosis of the liver and decreased and increased liver functions.

90.     Moreover, Plaintiff alleges that Defendants' Dr. Zahtz, Dr. O'Brien, Tuell Mershon and others were deliberately indefferent to his numerous complaint that medical conditions were causing him constant injuries, pain, suffering, dizziness, nausea, mental confusion, inability to properly chew and digest foods. the Defendants' addduuateddbbeerous thereof oacaaceinics and interview resulting from sick calls with Plaintiff,in 2016

91.    On or about 8-24-16 Plaintiff asserts that he continued his five(5) year pursuit and again expressed his desire to participate in Dixon's Ecucational Programs and asked to take the entrance exam vai audia due to blindness. ( See Exhibit V)

92     In or about mid September 2016 Plaintiff asserts that the prescribed sunglasses given to him to prevent his painful photophobiabroke. It was after numerous request to see Dr. Hicks that he learned that Dr. Hicks no longer was the eye doctor at Dixon and Dixon had no optomotrist to address Plaintiff's medical needs.

93.     On or about 10-14-16 Plaintiff asserts that he sought mental health therapy from Dr. Doyle to deal with his extreme emotional distress caused by Medical staff's refusal refusal to treathis known medical conditions, refusal to replaced prescribed sunglasses although glasses are made in Dixon Optical Labs; and that their actions was causing hm unnecessary pain, fear and paranoia of permanent injuey and or death.

94.     On or about 12-18-16 Plaintiff asserts that he filed ADA grievance # 17-1-22 alleging Ada discrimination in educational, recreational and services, refusal to supply operating equipment for devices given him as ADA accommodation and refusal to provide prescribed medical devices"sunglasses" ( See Exhibits W1, W2 and W3 )

23

A.    Dixon's ADA Coordinator Barnhart did not hear this ADA grievance but
gave it to CCII Shire for handling.

b.    On 12-23-16 CCII responded stating, that he was scheduled for TABE test,
typewriter ribbons for ADA typewriter was not an ADA issue and sunglassess
may be provided by Wexfordthrough sick call.

c.    On 2-22-17 CWS Grafton stated that ADA Coordinator Barnhart stated the
ADA grievance did not need to be addressed by him. Plaintiff took TABE test,
typewriter ribbons are not ADA issue, yard and gym schedules are an administrative
decision. Also, sunglassesmay be addreessed at sick call.

d.    On 6-15-17 Defendant's Johnson and Baldwin denied grievance finding that
issue was appropriately addressed by facitity administration.

95.    Plaintiff alleges that for all times incompassing the years of 2105 and 2016
Defendant's IDOC, Wexford, Baldwin, Chandler, Fasono, Dr. Zahtz, Dr. O'Brien, Johnson,
Hendrix, Melvin, Martens, Tuell , Mershon and others. Did in furtherance of a policy
and practice to save on the cost of care and custody of Plantiff did knowingly and
intentionally continue to cause him extreme pain and suffering and violate his  ...
constitutional and civil rights. To wit;

a.    numerous violations of the 1st, 8th and 14th Amendments to U.S. Constitution

b.    numerous violations of the ADA and RA

c.    numerous violations of the HIPAA

96.    On or about 1-25-17 and thereafter Plaintiff asserts that he was placed
on a so-called waiting list of eye clinic as a result of many emergency request, complaints
and grievance ( See Exhibits X1 and X2 )

97.    On or about 2-10-17 Planitiff asserts as a result of health care staff
refusal to simply order his prescribed sunglasses from Dixon's Opticl Labs and the
the indiference to the his painful photophobia. Assistant Warden of Security Steele
allowed Plaintiff to order the heretofore denied ADA and precribed items fro an outside
vender. ( See Exhibit Y )

98.    However, after A/W Steele left Dixon, Plaintiff alleges that in a clear
act of retaliation for his numerous complaints about the refusal to provide ADA and
accommodations and medicallyeprescribed devices. The previously approved items were
withheld upon their arrival.

99. On or about 3-5-17 Pliantiff asserts that he filed an emergency grievance #
17-3-E8/17-4-37 directly to Defendant Varga, alleging medical staff's continual deliberate
indifference to his serious medical conditions. e.g. refusal to provide mandate medical
care for his degenerative eye disease, refusal to provide or allow the purchase of
medical supportive devices needed for tratment of the painful complications of his
disability related medical conditions. i.e. sunglasses for intense photophobia and
adjustable strap shower shoes for neuropathy in foot. ( See Exhibit Z1, Z2 and Z3 )

    a.    On 3-7- 17 Defendant Varga refused grievance emergency status.

    b.    on 3-28-17 non-HIPAA privacy officer CCII Wildman responded to
this ADA/Medical grievance stating Plaintiff will been seen by optomotry on
triage basis and medical needs items shoud by address by property or _clothing
( emphasis added )

    c.    on 5-8-17 non-HIPAA privacy officer Defendant Martens denied this
ADA/medical grievance stating that optomotry seen inmates on triage basis,
no order for shower shoes per healthcare. also, all tratment must by order
by medical staff not a matter of inmate preference. Defendant Varga concurred.

    d.    on 5-24-17 Defendant Johnson denied grievance stating issue was
approperiately addressed by the facility administration. Defendant Baldwin
concurred.

100. On or about 3-29-17 Plaintiff asserts that dixon's HCU new Optomotrist
Defendant Ludford saw him and confiscated his old and broken sunglasses and staed
that he would attempt to obtain permission for him to receive the sunglasses that

were ordered out of personal property.

101. On or about 4-4-17 Plaintiff asserts that he wrote to Defendat's Nicklaus
and Blackburn, again asking to be provided the durable operating devices needed for
the ADA accommodationgiven him or another form of effective commication methods.
Magnifiers_and etc. Plaintiff asked for these ADA accommodations to be paid for
using the mandated funding. Defendant's to date have not responded(See Exhibits AA)

102. On or about 5-1-17 Plaintiff alleges tht he was called to see Dr. Chamberlain
Who having never examined plaintiff's eye, informed him that because he had read up
on Keratocomus and could find no information stating that the eye disease causes
photophobia, he was therefore canceling all previous Doctor's prescriptions for
sunglasses.

However, Plaintiff armed with the medical information given to him by numerous Ophthalmologist treating his Keratoconus, was able to explain to Dr. Chamberlain why his eye disease causes photophobia as it was explained to him. Resulting in Dr. Chamberlain rescinding his previous decision to cancel the prescription for sunglasses. ( See Exhibit MRCCC 17C1 )

103. On or about 5-1-17 Plaintiff asserts that Dr. Chamberlain examined his left foot and found that he had an open soreand ingrown toenail. Dr. Chamberlain prescribed that he soak his foot in epson salt twice(2) a day for a month and referred him to see a podiatrist. ( See Exhibits MRCCC 17C1 and C2 )

104. On or about 5-3-17 Plaintiff asserts that he saw Mental Health Dr. Doyle and sought help for the extrem mental distress, paranoia and anxiety caused by feeling that Correctional and Medical Staff were attempting deliberately denying him needed medical treatments and disability assistance.

105. On or about 5-7-17 Plaintiff asserts that he filed an emergency grievance# 17-6-65 directly to Defendant Varga, again alleging the continual ADA discrimination in medical services, retaliatory denial of prescribed medical tretment. refusal to provide Ophthalmologist prescribed care for his eye disease, refusal to provide Dr. Chamberlain's prescribed medical care for his foot injuries and sunglasses. Once he ceased praticing medicine in Dixon HCU. ( See Exhibits BB1, BB2, BB3 and MRCCC17C1 and 17C2)

   a. On 5-10-17 Defendant Varga denied grievance emergency status.

   b. On 6-5-17 non-ADA and non-HIPAA privacy officer CCII Gray responded to ADA/Medical grievance stating that he waad been issued sunglasses and ADA coordinator states this is not an ADA accomiendation.

   c. ON 7-17-17 non-ADA and non-HIPAA provacy officer Defendant Martens denied grievance stating" this grievance officer has no authority to evaluate clinical decisions made by licensed physician" and and per health care fortier was issued sunglasses and per ADA Coordinator this is not a ADA accommendations

   d. On 9-20-17 Defendant's IDOC and Baldwin's ARB denied grievance stating by not addressing Plaintiff atthe allegations and " claims against staff are not substantiated Medical treatment provided and items ordered are at the discretion of the tending Physician. Doot soaks were discontinued

5-30-17not after only two days.

106. On or about 5-11-2011 Plaintiff alleges that Defendant Dr. Ludford gave him a pair of one day/single use sunglasses. These glasses are made to be worn only once, after dialation of the eye. Thereafter, he informed IDOC and Wexford staff that he had filled Plaintiff's prescription for sunglasses.

107. On or about 5-17-17 Plaintiff asserts that he wrote to Defendant Allen and A/W Wilkes, memorializing the events of 5-1-17 and the allegations in Grievance 17-6-65 and Defendant Ludford actions of 5-11-11 and asking for their assistance in resolving the ongoing and harmful denieal of ADA acommendations and medical treatment. ( See Exhibit CC )

108. On or about 5-29-17 Plantiff asserts that he filed ADA grievance # 17-6-45 to Defendant Blackburn, alleging misappropriation of federal funds, disparate and discriminatory treatment in educational, work assignments and recreational programs and services, refusal to provide necessary items and devices whithout which the ADA accommodation Defendats' provided him can not operate. A request for the ADA Coordinator toprovide a list of ADA rights and his duties as ADA liason was also made. ( See Exhibits DD1, DD2, DD3 and DD4 )

    a. On 5-31-17 Plaintiff wrote to Defendant's Baldwin and Pasley seeking their assistance in resolving the ADA disparate and discriminatory treatment discribed in Gr.# 17-5-65.

    b. On or about 6-17-17 Defendant Blackburn denied grievance stating in relevant part, "typewriter ribbons cannot be provided as part of an ADA accommendation" " offender is again reminded that the approprite style of typewriter ribbon is available at commissary as it is for all other offenders". " Ther is presently no evidence which could be identified that suggests tha offender's condition is preventing participation in any special program job assignment or educational service" " The offender may attend any scheduled special program offered in the facility like any other offender and has already been assined an ambulatory aid to assist himin physically attending such an event", " Assignment Office is responsible for satisfying requests for job assignment andlis capable of accommendation offenders with visual imitations, but advise that offender has

27

made no recent request for a job assignment" "the offender would normally have
additional opportunities to participate in higher levels courses through Lakeland
college, however, these educational programs are temporarily susspended"
recommendation based on all available information the ADA Facility Coordinator
is reasonably satisfied that this offender is receiving the appropriate accommedations
through the ADA process and that not other presently available accommodation
will assist the offender further'}

c.   On 9-5-17 Defendant Johnson denied grievance stating no dates not submitted
in timeframe

109.   Plaintiff alleges that at all times relevant to his incarceration in
Defendats' Dixon Correctional Facility, there was several job assignments that he
had requested in Correctional Industries, Dixon Optical Labs that he could perform
with little or no special accommodations and at least one(1) vocational course offered
by Lakeland College, Culinary Arts. Which is one of the careers and classes that
the Illinois Dept. of Human Services outfits with accommodations so that the blind
can learn that skill. Lakeland College could have provided accommodations for the
blind at little or no expense. Vocational Courses at no time were cancelled at Lakeland.

110.   On or about 6-9-17 Plaintiff asserts that he received a response from
Defendant Pasley, in regards to grievance # 17-6-45. Defendant Pasley express his
confusion on how a typewriter facilated effective communication. Also, he stated
that he communicated with Defendant Blackburn and asked them to review his elligibily
for job and work assignments. ( See Exhibits FF1 and FF2 )

Thereafter, Plaintiff wrote Defendant Pasley back explaining his desire to
participated in all Defendnts IDOC's programs and service and answered his question
about how a typewriter could provide more effective method of communication than
a cassette tape that went out of use aprx. thrirty(30) ago.

111.   On or about 6-12-17 Plaintiff asserts that he filed an emergency grievance#
17-6-72 , alleging deliberate indifference to the serious medical needs of his degenerative
ye disease, foot injuries,being supplied a pair of one day/single use sungalsses
for photophobia and the use of Nurse Practitioners as primary care providers for
all chronic care clinics and using physicians only as rubber stamper to Nurses diagnoses.
( See Exhibits GG1, GG2 and GG3 )

28

         a.    On 6-20-17 Defendant Varga denied grievance emergency status.

         b.    On 9-7-17   non-HIPAA privacy officer CCII Dillabough responded to medical grievance stating, " inmate has oppoinment with Ophthamologist and was not seen on 6-7-17 by eye Dr. Inmate needs to sign up for eye Dr. for sunglasses and sick call for bod line for nail. inmate does not choose provider." <u>Relevant Part</u>

         c.    On 9-25-17 non-HIPAA privacy officer Defendant Martens refused to hear medical grievance stating that issues previously grieved in 17-4-37, 17-6-45 and 17-6-65 and finalized by CAO.

         d.    On 10-18-17 Defendant Johnson denied grievance for not being submitted in timeframe and previously addressed in gr.# 17-4-37.

112.  Plaintiff asserts that Defendat's Baldwin, Johnson, Varga, Blackburn, Martens and others conflation of ghievances 17-4-37, 17-6-45 and 17-6-65 with 17-6-72 was a violation of his right to a fair and impartial grievance process. The issues presented in the named grievances are connected by subject and the fact that the denials of prescribed medical treatment and ADA rights are continuing as alleged in each grievance.

113.  On or about 6-12-17 Plaintiff asserts that he filed ADA grievance # 17-6-108 directly to Defendant Blackburn alleging that Defendant Melvin had discriminated against him and refused to employ himin correctional industries because he was blind in violation of the ADA. ( See Exhibits HH1,HH2, HH3, HH4 and HH5 )

         a.    On or about 6-12-17   Defendant Blackburn refused to hear this . Dixability discrimination in employment grievance and did not forward it to the proper IDOC Correctional Industries Staff Member having authority over Melvin and the independant IDOC Bepartment he supervised.

         b.    On 6-16-17 non-ADA and non- authorized Correctional Grievance officer Defendant Martens refused to hear ADA grievance, stating Failed to file in accordance with DR 504.810(a) timeframe and no justification for further consideration.

         c.    on 6-28-17 Plaintiff resubmitted grievance directly to Defendat's Baldwin,Pasley, Blackburn and Marterns. Along with a letter requesting that the grievance by heard because it was a continual violation and or could be heard as an exception under DR. 504, et.seq.

         d.    On 7-27-17 Defendant Johnson denied grievance as not submitted in the timeframe outlined in Dept. Rule 504. <u>No other Defendant responded and no rationale given</u>

§    114.  Plaintiff alleges that Defendant Melvin, in additon to denying him employment
for no other reason them being blind. Defendant Melvin was engaged in unlawful acts
concerning Correctional, funds, materials, products and inmates. So significant that
he and those he conspired with including inmates were disciplined and removed from
Correctional Industies Dixon Optical Labs.

   115.  On or about 6-18-17 Plaintiff asserts that Defendant Tuell during his
scheduled combined chronic Hep C and Diabetic Clinic. Noted, that his liver functions
and Hep. C was worsening and that his diabetes was poorly controlled. Nothing was done
his diabetes but a referal to Hep. C. Clinic was made. ( See Exhibit MRCCC 17D )

   116.  On or about 6-27-17 Plaintiff alleges taat in continuation of his retaliation
against him for making prior complaint concerning his misconduct. Defendant Farias
interfered and prevented him from receiving medically prescribed treatments. Wherein
he told Nurse Chaddie not to fill his medical prescription and wrote Plaintiff a
disciplinary report when he told Defendant Farias the dangers his action placed upon
him and that he was going to write a grievance on his, Farias's interference with  l
Plaintiff's medical care. ( See Exhibit II1)

   117.  On or about 6-29-17 Plaintiff alleges that Defendant Remmers acting as
disciplanary committee chaairman, did in violation of Plaintiff's first(1st) Amend.
right find him quilty for stating " I have not written you up yet but I am going to
and you are going to lose your job", " If I lose my eye you're done!" Punishment  - -,,
was issued and Defendat Varga concurred. ( See Exhibit II2 )

   118.  On or about 6-28-17 Plaintiff alleges that Defendant Dr. O"Brien during
an examination was deliberately indifferent to the serious medical needs of his
diabetic gum disease and the effects. i.e. he refused to have the diabetic gum disease
treated and would not provide Plaintiff with dentures to replace the aprx. twenty seven
(27) teeth lost because of lack of professional teeth cleaning and retardation of
diabetic gum disease. Unless Plaintiff paid the cost of the medical procedures and dentures.
Demand was repeated at all subsequent visits. ( See Exhibit Med. Rec. Dental Clinic )

29

119.  On or about 6-27-17 Plaintiff asserts that he filed an emergency grievance directly to Defendant Varga alleging staff misconduct and violations of HIPAA. Wherein, Defendant Farias having knowledge that he would be receiving prescribed medical itemms at nightly medical line called Nurse Chaddie and ordered her not to provide him with his prescription and that this was another act in a continual pattern of harrassment and retaliation. ( See Exhibit JJ1 )

    a.   On 6-20-17 Defendant Varga denied grievance emergency status.

    b.   On 7-11-17 CCII Dillabough responded to grievancestating the words of the medical prescribtion and " HIPAA was not violatedc/o asked a potential security issue about tape". no allegation of grievance was addressed

    c.   On 7-25-17 Plaintiff resubmitted grievance via grievance box grievance remains unhearded.

120.  On or about 7-11-17 Plaintiff asserts that he filed grievance 17-7-29 directly to Defendat Varga allegeing ADA discrimination, staff misconduct, medical treatment, theft of person property and dietary. Speciffically illustrating Defendant Farias's acts of misconduct. Along with the conflation of Correctional anddMedical Staff's authorities and rolesaas illustrated by a Nurse giwwing him an discriplinary ticket for ddoobeying her direct order to shut up. ( See Exhibits KK1, KK2 and KK3 )

    a.   On or about 8-17-17 Plaintiff resubmitted this emergency grievance because it was ignored.

    b.   On 8-17-17 Defendant Varga denied grievance emergency status

    c.   On or about 10-12-17 Defendant Martens altered the face of the ₹ i grievance to make it one of gwiewing disciplinary reports and denied it, stating thaat the IDR's written were properly issued" the allegations of the grievance were not addressed and in his note he fabricated a false rationale as towhy the resubmitted but unheard allegation concerning Defendant Farias would not be addressed.

    d.   On 11-13-17 Defendant Johnson denied grievance as being time barred and no due process violations and appropriately addressed by facility administration and Defendant Baldwin concurred.

121.  Plaintiff alleges that Defendants' Baldwin, Johnson, Varga, Martens and others knowingly violated his right to Due Process. Wherein, grievances of 6-27 and 7-11-17, Gr.# 17-7-29 were timely filed and at any rate represented continual violations of law by correctional and wexford staff. Also, in answering them they manipulated grievance numbers and incident dates and fabricated narratives in order to deny and or evade allegations.

122.  On or about 7-11-17 Plaintiff asserts taht he filed grievances # 17-8-E59 directly to Defendatn Varga alleging Medical care or lack thereof for his diabetes and hep.C that amounted to technical attempted murder, the improper use of Nurses as primary care provider/physicians in administering chronic care clinics and only using Doctors as rubber stamp approvers of Nurses prescribtions and diagnoses, extortion in the form of require him to pay for medical treatments or do without, cost saving policies and practices, HIPAA violations and deceptive methods and measures. ( See Exhibits LL1, LL2 and LL3 )

   a.   On or about 7-30-17 Plaintiff resubmitted grievance due to lack of response by Defendant Varga.

   b    On 8-21-17 Defendant Varga denied grievance emergency status

   c.   On 8-29-17 Grievance was resubmitted to CCII Hendrix

   d.   In early November 2017 CCII Garland at Plaintiff request sent him written response to status of gr.#17-8-E59 Stating " CCII was waiting for response from HCU"

123.  On or about 8-9-17 Plaintiff asserts that in accordance with Illinois law he filed grr# 17-8-E59 directly To Defendant's Baldwin and Meeks in their capacities as Defendant IDOC's Director and Agency medical Director and Ombudsman between IDOC and Wexford health Sources. ( See Exhibits LL4 and LL5 )

124.  On or about 8-12-17 Plaintiff  asserts that Defendant Mershon conducted a combined chronic care clinic of his diabetes, high bllod pressure and cardiac medical conditions. In which his diabetes was recorded as uncontrolled and A1C was 12.3 up from 9.8. No action was taken ( See Exhibits MRCCC 17E1 and $\mathcal{E}_2$)

31

125. On or about 9-26-17 Plaintiff asserts that he went to the cornea clinic at University of Illinois(UIC) and saw Dr. Kim. Who after examination found Plaintiff's cornea to be extremly dry, recorded his complaints of headaches, eye pain and photophobia. Reccommendations for daily applications of warm compress to eye and suglasses were made. ( See Exhibits MRCCC17F, 17G and 17H1 and 2 )

    a.    On 10-11-17 Defendant Ludford in post furlough interview noted rec. for daily warm compress and sunglasses.

    b.    On 10-18-17 Defendant Dr. Zahtz in secoud post furlbugh interview denied the treating Ophthalmologists reccommendations for warm compresses and sunglasses.

    c.    On 10-31-17 Defendant Dr. Ludford saw Plaintiff as a results of his numerous and constant visits to sick call complainning of extreme pain and refusal to give Ophthalmologist's prescription to reliewe his pain.

126. Plaintiff alleges that Defendant's Dr. Zahtz, Dr. Ludford and Allen were deliberately indifferent to his medical needs and pain and suffering. Not only by the fact that they refused to provide the prescribed and reccommendated medical items, but they did so when toprovide them would have been at no expense or very little. i.e. Dixon Correctional Industries makes glasses for all state agencies and other businesses.

127. On or about 11-1-17 Plaintiff asserts that he filed grievance # 17-11-E5 directly to Defendant Blackburn alleging that the ADA accommodation of being provided with a ambulatory aid to assist him and improve his quality of life was being dangerously altered in order to save cost. i.e. the two(2) aids that were priviously assigned exclusively to him, were now being assigned new duties and made to asists aprx. hundred (100) other inmates. and the firing of his familiar long time aids and reassignment of several new ones forced him to give his personal, family and private information to unknown comvicted felons most of whom are violent. ( See Exhibits MM1, MM2, MM3, MM4 and MM5 )

    a.    On 11-6-17 Defendant Varga denied ADA grievance emergency status.

    b.    On or about 11-8-17 Defendant Blackburn refused to hear ADA grievance

    c.    On 11-9-17 CCII Garland responded stating " if abulatory assistance is needed must utilize sick call" " if deemed medically necessary HCU will advise assignment committee of your need to have an aide."

c. On 12-29-17 non-ADA Coordinator and non-HIPAA privacy officer Defendant Martens responded to the ADA grievance Stating, " all treatment must be ordered by the Medical Director at this facility and not a matter of inmate preference. This grievance office ha no authority to evaluate clinical decisions made by licensed physiciah. must address concerns at sick call " emphasis added"

d. On 1-26-18 Defendant Johnson denied grievance stating, ADA ambulatory aid policy in which the aid was not able to sty with the offender " Moot, this office contacted the ADA Coordinator at Dixon CC who indicated this issue has been resolved. Defendant Baldwin concrrred.

128. Plaintiff alleges that Defendant IDDC, Baldwin, Johnson, Varga, Martens, Allen, Blackburn and óthers engaged in the practice of fraudulent concealment. Where in addressing medical grieavance they refer to Medical staff as Health Care Unit (HCU) no person(s) or official medical records are identified for later use by the agrieved party. this practice is designed to sheild offending parties and is in violation of Due process.

129. On or about 11-29-17 Plaintiff asserts tht he wrote to Defendnat IDOC"S Chief of Investigations & Intelligence. Requesting that his office initiate an investigation into Correctional staff and agents. Listed were attached grievance as examples of unlawful conduct and a recital of some of my allegations. No reply was received. ( See Exhibit NN)

130. On or about 12-7-17 Plaintiff asserts that he was seen by Defendant Merson during his Hep.C chronic Care clinic and informed that as a result of the worsening Hep.C the cure was being recommended. ( See Exhibits MRCCC 17I1, 17I2, 17I3, 17I4 and 17I5)

a. Oh 12-8-17 Dr. Paul reccommended that he be given the cure for Hep.C
b. On On 12-27-17 Plaintiff received an ultrasound of his liver
c. On 1-4-18 Defendant Dr. Zahtz informed him that his liver fibrosis level was classified as F3 and he was approving Hep.C Cure
d. On 3-27-18 Plaintiff sign the consent form to receive Hep.C treatment

131. On or about 12-13-17 Plaintiff asserts that he again saw Defendant Mershon during his combined cardiac, high blood pressure and diabetes chronic care clinics and informed that his A1C blood sugar level was 12.2% and that she wanted to put Plaintiff in the infirmary for observation.

132. Plaintiff asserts that he declined to be placed in the infirmary, because from the time of his initial diagnosis the treating Endocrinologist found that he was resistant to the insulins called NPH and Regular. combined with the fact that Defendant's Mershon and Tuell and tothers had precribed aprx. one hundred units(100) of the then precribed inculins, only to see a decrease in his wieght and increase in his A1C and Blood Sugar Levels to average over two hundred and fifty(250) MPD each reading.

133. Plaintiff alleges ttat while in the custody of Defendant IDOC he sufferred retaliation at the hands of correctional staff and it's agents. e.g. for the periods between the years 2011 and 2018 out of the total amount of cell searches of cells on the 3rd fl HCU, his cell was searcged aorz, thirty three (33%) percent of those times.

134. On or about 2-16-18 Plaintiff alleges that Defendant Black in furtherance of retialtions against him, came to his cell and said, " "racial slur" ypu have five minutes to put up your property in boxes or I will take your shit" going on to state, " I am a member of correctional tact team and it's my job to put inmate like you in their place"

135. On or about 2-16-18 Plaintiff assert's that because he is blind, the so-called order was in violation the his ADA accommondations and IDOC rules and regulations on complaince; and the many past intimidating and harrassing acts of Defendant Black. Plaintiff requested that he call a supervisor and the crisis team.

136. On or about 2-16-18 at aprx. 7 pm  Plaintiff asserts the Defendant Gonsalos, Sgt. Battles and c/o Revenig arrived on the 3rd fl at the same time. Plaintiff covey his reasons for his requests and was forced to tell correctional staff private medical and mental health information before his request for a cirisis team was considered and denied.

137. On or about 2-16-17 at aprx. 7 pm Plaintiff alleges that he overheard defendant's Gonzalos and Black along with Sgt. Battles and c/o Revenig discussing a plan in which they could cover up DefendantsBlack's unauthorized actions. They decided to say that it was a routine shakedown.

34

138.  On or about 2-16-18 at aprx. 7pm Plaintiff alleges that he informed Defendant Gonzalos that he had overheard their conversation and plan and again made the request for a crisis team. Defendant Gonzalos then said he was a member of the mental health crisis team and he finds that no mental health action should be taken, hence, all four(4) correctional officers search his property for aprz. one and half (1½) hours.

139.  On or about 2-17-18 Plaintiff asserts taht he received a disciplinary ticket written by Defendant Black, charging him with #304 insolence, " Stating that he is a racist, he single me out because I am a nigger", #308 unauthorized property and disobeying a direct order to go to dayroom. The IDR was witness by c/o Revenig, Defendant Gonzolos's and Sgt. Battles involvement in the incident was consealed. ( See Exhibits 001, 002, and 003 )

   a.  On 2-20-18 at aprx. 9am Defendant Remmers denied Plaintiff's request to call witnesses and prepare evidence and present a defense. found him guilty based only on correctional staff statements and Defendant Varga concurred.

140.  Plaintiff alleges that Defendant Remmers acting as chairman of the IDR hearing committee did in promotion of Defendant IDOC's practice and policy of denying Due Process in order to conceal unlawful conduct did deny him a fair and impartial hearing. wherein he was able to present exculpatory evidence, call witnessess and prepare and present a defense. Doing so by holding the hearing the first working day after the ticket was written and before the first working day of the week's mail was deelivered. inter alia.

141.  On or about 2-17-18 Plaintiff asserts thht in order to mitigate his extreme emotional distriess and to document the events of 2-16-18, he made numerous requests to see the crisis team and correctional supervisory staff. e.g.

   a.  On 2-17-18 11pm to 7am shift, Plaintiff requested that the crisis team be called and supervisory staff. However, per c/o hanson, Defendant Gonzlos denied the request.

   b.  On 2-17-18 7am to 3pm shift he had Sgt. Townsend and c/o Abbel document the condition of his cell and call a crisis team.

   c.  On 2-17 and 2-18-18 he was seen by Dr. Stone and Mrs. Hoffman of the mental Health Crisis Team. Wherein, they documented his mental distrews and

35

his intention not to leave his cell at any time that Defendant Black is assigned to or present on the 3rd fl HCU unless correctional supervisory staff or crisis team is present to witness encounters.

      d.    Thereafter, on 3-11, 3-16, 6-8 and 9-26-18 Plaintiff was seen by mental health professionals Dr.Doyle, Dr. El Haj and Mrs. Price concerning the mental distress he was feeling because of the perception that Correctional and Medical staff were knowningly and intentionally causing him harm and injury. When they allow him to suffer frompunnecessary pain by not following Doctor's Orders and not treating his deadly diseases.

142.  On or about 2-17-18 Plaintiff alleges that Defendant Black having knowledge that he would not leave his cell unless crisis team or supervisory staff was present, he misuesed plaintiff's private medical information and violated HIPAA by writing him a false and retaliatory IDR ( See Exhibits PP1 and PP2)

      a. on 2-20-18 Defendant Farias found Plaintiff guilty of disobeying Defendant Black's direct order to take medicine. Plaintiff documented exculpatory defense although presented was not excepted.

143.  On or about 2-20-18 Plaintiff asserts that he filed an emergency grievance directly to defendant Varga alleging ADA discrimination, staff misconduct, retaliation and false IDR's. speifficall the actions of Defendant's Gonzales and Blacks. ( See Exhibits QQ1, QQ2 and QQ3 )

      a.    On 2-27-18 Defendant Varga denied grievance emergency status

      b.    On 3-20-18 submitted to Defendants' IDOC and Baldwin's ARB.

      c.    On 4-7-18 resubmitted to Defendant Martens

      d. On 6-5-18 resubmitted to Defendant Martens with letter.

      e.    Grievance remains unheard and unanswered.

144.  On or about 2-23, and 2-24-18 Plaintiff alleges the Defendant Black in dereliction of his duties gave false information to medical staff in violation of HIPAA Which caused Plaintiff to be written IDR's and punished. Also, 1st fl c/o Revenig claimed to have witnessed a conversation that took place on 3rd fl HCU. ( See Exhibits RR1 and RR2 )

      a.    On 2-26-18 Defendant Farias recorded that Plaintiff pleaded guilty to both to both the obove IDR's, issued punishment. Defendant Varga concurred.

145.  Plaintiff alleges that Defendant Farias while acting a program ticket hearing officer and a correctional officer in promotion of Defendant IDOC's practice and policy to deny due process in order to conceal unlawful conduct. Did deny him his right to a fair and impartial hearing. Thereby continuing and concealing his and others unlawful and retaliatory acts.

146.  On or about 2-25-18 Plaintiff asserts that he filed an emergency grievance# ꓿ ꓤ 2822E30 directly to Defendant Varga alleging the Defendant Black engaged in specific acts of misconduct, retaliation and giving of false information to medical staff in order that they write false IDR's against him. ( See Exhibits SS1, QQ2, 003 and QQ4 )

A. On 2-28-18 Defendant Varga denied grievance emergency status.

b. On 3-20-18 submitted to Defendant IDOC and Baldwin's ARB.

c. On 4-7-18 submitted to Defendant Martens

d. On 6-5-18 resubmitted to Defendant Martens with letter.

e. gievance remains unhearded and unanswered.

147.  On or about 3-6-18 Plaintiff asserts that he was seen by an Optomologist at UIC. After an eye examination the following was determined. That he had extremely dry cornea and photophobia, prescriptions find reccommendations was to provide Restasis for dry eye and sunglasses for photobia were made. ( See Exhibits MRCCC 19A1, 19A2, 18B1 abd 18B2 )

a.   On 3-8-18 Defendant Dr. Zahtz denied prescription for Restasis and referred sunglasses prescribtion to Dixon's eye Dr.

b.   on 3-15-18 Plaintiff reported to sick call complaining of eye pain, migraine headaches and photophobia.

c.   3-19-18 went to UIC eye clinic to seen oculist for prosthetic eye aprx. two(2) years delay in recoommendahion.

d.   on 3-21-18 Saw Defendant's Zahtz and Ludford concerning dry eye and sunglasses prescriptions. They took no action

e.   On 4-6-18 sick complaining of dry eye, migraine haedaches, pain and photophobia.

148.  On or about 4-7-18 Plaintiff asserts taht he filed grievance # 18-4-119 simultaneously with Defendant's Baldwin, Varga and Martens, alleging ADA discrimination, staff misconduct in that Defendant's Remmers and Farias denied him due process in the

disciplanary hearing that they held for the named IDR's, where they did not allow time
to prepare a defense, present evidence and witness testimony and exculpatory documents.
( See Exhibits TT1, TT2, TT3, TT4 and TT5 )

      a.     niether Defendat's IDOC nor Baldwin  responded to grievance sent
directly to them.

      b.     On ōr about 5-22-18 Defendant Martens,  did not address the due process
violations as alleged but simply restated disciplainary reports and upheld quilty
findings. Defenant Varga concurred.

      c.     On 7-20-18 Defendant's IDOC and Baldwin's ARB remanded grievance back
to Defendant's Martens and Varga directing them to address all issues

      d.     On or about 7-22-18 Defendant Martens in additions to adopting
Defendant's Remmers and Farias's report summaries, went on to present his evidence
in support of quilty findings. No evidence was allowed to be submitted by Plaintiff
for consideration; and further went on to create a new IDOC rule concerning property
complaémce. Defendant Varga concurred.

      e.     On or about 8-1-18 Defendant's IDOC and Baldwin's ARB finalized grievance
stating claims of due process violations are not substantiated. Claims against
staff are not substantiated claims of improper confiscation of property is not
substantiated.

149.  Plaintiff alleges that Defendant's IDOC, Baldwin, Varga, Martens and others
in promoting the pratice and policy of denying due process in order to conceal unlawful
conduct of IDOC staff and agents. Did in clear dereliction of their duties deny him
a fair and impartial hearing in which he could present exculpatory evidence and witness
in support of his allegations made in gr.#18-4-119.

150.  Moreover, Plaintiff alleges that Defendant Martens violated his right to
medical privacy and HIPAA. When he fabricated medical evidence and faltely stated
that medical records did not show he had a spare prosthetic eye. ( See Exhibit MRCCC15G)

151.  On or about 4-10-18 Plaintiff asserts that Defendant Tuell during his
combined chronic care clinic noted that his blood sugar level was 204MPD's and A1C was
11.o% the 96 units of insulins previously prescribed was renewed. ( See Exhibit MRCCC18
18C1 and 18C2 )

152. Plaintiff alleges that Defendant's IDOC and Wexford in furtherance of their cost saving policy and practice for the entire periods of being incarcerated, 2011 until present, he has never been allowed to see an Endocronologist for treatment of his diabetes. Ninety (90%) percent of the time the primary care provider for his diabetes were Nurse Practioners Defendant's Tuell and Mershon. While Defendant's Lank and Zahtz acted as rubber stamp authorizating physicians to the Nurses Insulin prescriptions and treatments.

153. Plaintiff alleges that during the entire time of his encarceration in IDOC his A1C and Blood sugar lever MPD steadily encreased. No persons specializing in the treatment and care of diabetes was ever consulted.

154. On or about 5-17-18 Plaintiff asserts that he simultaneously filed grievances directly to Defendant's Baldwin and Varga, including a copy and letter to Chief of Investigations Delia. Alleging systemic misconduct by IDOC and Dixon Correctional Staff and it's Agents, speciffically detailing alleged acts of misconduct ( See Exhibits UU1, UU2, UU3 and UU4 )

     a.    On 5-29-18 Defendant Johnson changed the nature of the grievance and refused to hear it due to not being filed in timeframe outlined in Dep. Rule 504.

     b.    Defendant's Varga and Baldwin did not responded to grievance. Nor did Chief Delia.

155. On or about 5-22-18 Plaintiff asserts that Denfendant Dr. Zahtz during a combined chronic care clinic reduced Defendant's Tuell and Mershon prescription that he inject ninety six(96) units of insulin a day, to less than fifty(50) units a day.

155   a.    On 6-14-18 Defendant Dr. Zahtz reduced his prescription for him inject aprx. 50 units of insulin by more than half to less than 20 units a day.

156. On or about 5-31-18 Plaintiff asserts that after numeropus letters, requests, and grievances to Defendant Blackburn requesting allowances to participate in Educationsl program and a meeting initiated by him with DefendantStevenson Associate Dean of Lake Land College. Stevenson sent him a letter. ( See exhibits VV1 and VV2 )

157. On or about 6-8-18 Plaintiff asserts thht he had his second(2nd) session in three(3) month with Dixon's Mental health Dr. El Haj, concerning solutions for the emotional distress caused by the perception that he was being denied medical treatment in an attempt to murder him.

158. On or about 6-15-18 Plaintiff asserts taht he saw Dixon's eye Dr. Fahey, who examined his eye and prescribed sunglasses for photophobia and fish oil for dry eye.

    a.    On 8-28-18 UIC Optomotrist again prescribed sunglasses and recoommended treatment of extreme drey eye.

    b.    On 9-13-18 Dixon's eye Dr. Popovich examined his eye and again presribed sunglasses for his photophobia.

159. On or about 6-15-18 Plaintiff asserts that he saw Defendant Tuell for Hepatitis C. Clinic and complained of pain in right side, nausea, dizziness and hard stools. Also, an inquiry obout when the hep C cure/treatment would start was made.

160. On or about 8-23-18 Plaintiff asserts that Defendant Mershon during a diabetic clinic informed him that he diabetic A1C blood sugar level was over 11% percent and that it was her opinion that he should be confined to infirmary in order to prove to him that it was his bad eating habits that causes his diabetes to be uncontrolled not insulin resistance as Plaintiff has insisted for years.

161. Plaintiff alleges that a lay person would in possession of the information that he had recently loss forty(40) pounds, but his A1C and blood sugar level reading ( daily MPD ) was increasing to aprx. two fifty (250) MPD at each reading despite ever increasing insulin dosages, would know that it was not eating habits that caused high blood sugar level but the effectiveness of the medicine.

162. Therefore, upon Plaintiff's confinement in Infirmary he immediately went on a hunger strike until he saw a Doctor, who would address his diabetec and Hep C treatment concerns.

163. Plaintiff alleges the Dixon's Medical Staff was quilty of attempted murder, where they under the mandatory ingestion of medicaltion policy forced him to inject insulin and glipizide twice a day when he was not eating. ( See Exhibit Plaintiff's MPD affidavit )

164. On or about 8-27-18 Plaintiff asserts that he waw Defendant Dr. Zahtz. Who after a discussion about future diabetic and Hep C treatment and review of medical date. Changed the configuration and dosage of the NPH and Regular type of insulin he was already receiving. Plaintiff was required to be confined in the infirmary for five (5) more days, under observation and meal control.

165. On or about 9-1-15 Plaintiff asserts taht Defendant Dr. Zahtz's insulin regimen, glipized and allowing himonly food served by the facility. Produced a daily MPD blood sugar level of aprx. two hundred and fifty(250). Plaintiff was discharged from the infirmary with no charges to his insulin and glipized prescriptions.( See Exhibit Plaintiff's MPD affidavit )

166. On or about 9-6-18 Plaintiff asserts the Defendant Dr. Lank, again had him confined to the infirmary supposedly due to uncontrolled high blood sugar levels for three(3) days. In this confinement his diet was restricted to low carbohydrates and his blood sugar levels (MPD) was tested every two(2) hours. Defendant Dr. lank's experiment produced a MPD blood sugar level in Plaintiff of aprx. two hundred and sixty (260) at each reading . ( See Exhibit Plaintiff's MPD affidavit)

167. On or about 9-11-18 Plaintiff asserts that because Defendant Dr. Lank had refused to discharge him from the infirmary after he completed her experiment, he called for a crisis team and to see Defendant Varga. The nature of the crisis was fear of death from medical staff's treatments and the unjust confinement. Also, he wanted Defendant Varga to contact Defendant Meeks in order that he may as ombudsman review Plaintiff's medical treatments or lack thereof.

168. On or about 9-14-18 at aprx. 11am Plaintiff alleges that Defendant Dr. Lank cancelled his prescription for NPH and Regular and so-called 70%/30% and discharged him from the infirmary. Plaintiff's method of diabetes control was then starvation, since glipized has proven to be ineffective  h

169. However, on or about 9-14-18 Plaintiff alleges that Defendant Allen stopped his discharge from the infirmary, stating that his medical situation was being reviewed

41

for sunglasses would only be filled if he paid for them.

b. On 2-13 and 3-19-19 UIC Optomotrist reccommended that Plaintiff see a cornea specialist for eye pain, migraine headaches and cornea damage. Also, again she prescribed sunglasses and safety glasses.

174. Plaintiff alleges that he is being denied the prescribed medical treatment for his degenerative eye disease Keratoconus. Refferrals to outside Ophthalmologists for consultation and treatment have been unnecessarily delayed and prescribed medications and medical devices have been refused. While other inmates have received the same prescriptions free of charge.

175. Plaintiff alleges that Defendants IDOC, Wexford, named employees and agents have refused to provide him medical treatment and prescriptions needed to aleviate pain and suffering, because they are promoting a policy and practice of saving on the cost of his care and retaliating against him for his grievances and complaints.

176. On or about 2-21-19 Plaintiff asserts that according to Defendant IDOC's and Dixon's new grievance procedure, he file an emergency grievance # 19-000771 against Defendant Blackburn alleging that notwithstanding the numerous request made to him and many CCII's to be ollowed participation in educational, work and early release programs and services. The denials appear to be racially based in light of who receives ADA services. ( See Exhibits XX1,XX2,XX3 and XX4 )

a. On 2-22-19 grievance was returned as untimely filed.

b. On 3-21-19 Plaintiff resubmitted it along with letter explaining complaints could not be untimely because allegations represent continual violations of the ADA.

c. On 4-1-19 Defendant Varga denied grievance emergency status

d. On 4-2-19 Plaintiff resubmitted grievance. It remains unheard and unanswered.

177. On or about 3-8-19 Plaintiff asserts that Defendant's Baldwin and Johnson issued their reported on his 10-1-18 grievance # 18-10, alleging refusal to treat diabetes and hep C by named medical staff. ( see Exhibit WW% )

a. report stated in relevant part " that Healthcare staff indicated offender Fortier is being monitored and folbowed for his diabetic care. the offender does

42

After many hours, his witals were taken and he was released from the infirmary at aprx. 5pm. the purpose and results of Defendant Allen's review has never been disclosed.

170. On or about 9-25-18 Plaintiff asserts that Defendant Mershon conducted his Hep C. Clinic, wherein he complain of constant side pain, nausea, dizziness and fatique. an inquiry about the approved Hep C. cure/treatment was made. No answer or action was taken.

171. On or about 10-1-18 Plaintiff asserts that he simultaneously filed Emergency grievance #18-10 directly to Defendant's Baldwin, Dr. Meeks and Varga, alleging seven(7) years of deliberate indifference to and failure to treat his diabetis and Hep C. and recently forcing him to control his diabetis by starvation and to face end stage Hep C without the approved and promised cure/treatment. ( See Exhibits WW1, WW2, WW3, WW4, WW5 and WW6 )

    a. Defendant Meeks did not respond to letter or grievance.

    b. On 10-21-18 Defendant Varga granted grievance emergency status and referred it to HCU to "Person unnamed".

    c. On 10-25-18 Defendant Johnson refused to hear grievance stating that medical issues first must be raised at current facility.

    d. On ôr about 11-8-18 non-HIPAA Privacy Officer Defendant Martens responded and stated "in relevant parts" that grievance had been refferred to Health Care Administration and that Fortier indicates he was seen by DR. Zahtz and DR. Lank*** This grievance officer has no authority to evaluate clinical decisions made by licensed physician. Defendant Varga concurred.

    e. On 12-3-18 Defenant Johnson remanded grievance back to Defendant Varga for review by HCU Staffdirecting them to provide a written response.

172. On or about 12-17-18 Plaintiff alleges that Defendant Dr. Zahtz during a consultation informed him that a Wexford medical official had denied the numerous prescriptions for sunglasses to treat his painful photophobia.

173. On or about 1-3-19 Plaintiff asserts that Dixon's eye Dr. Popovich examined his eye and prescribed/reccommended that he be provided with sunglasses to treat photophobia.

    a. On 2-5-19 Defendant Dr. Zahtz informed Plaintiff that his prescription

43

not qualify for Hepatitis C treatment at this time." grievance considered moot.

178.  Plaintiff alleges that Defendant's DR. Zahtz, Dr. Lank, Tuell and Mershon.
In the months since he was taken of daily injections of insulin, have seen him for no
less thannfour(4) chronic care clinic and have informed him that his blood tests show
that his diabetic A1C blood sugar levels have consistently been over eleven(11%) percent
and his daily blood sugar levels MPD has been aprx. two hundred and fifty(250).
Also, his liver functions and liver enzymes are high and abnormal. They took no action
but did make promises that a outsied consultation with an Endocronologist for diabetes
was forthcoming.

179.  Plaintiff alleges **Defendant's Dr. Zahtz**, Dr. Lank, Tuell and Mershon are
retaliating against him with the refusal to treat his insulin dependant form of diabetes
with effective insulin like the one called Lantus. Where other inmates who are resistant
to NPH, Regular and 70%/30% are given Lantus. Several of them are presently at Dixon C.C.

180.  Plaintiff alleges that a lay person in possession of the information that
his diabetic A1C  blood levels are over eleven (11%) percent and his daily blood sugar
levels MPD are over two hundred and fifty(250). Would know that he needed some form of
insulin to supplement and or control his diet.

181.  Morevoer, Plaintiff alleges that a lay person in possession of the information
that his Hepetitis C. wasin the end stage of liver disease/fibrosis level four(4) and
that his liver functions were adversely affecting him. Even they would know that medical
treatment was needed immediately.

182.  Plaintiff alleges that Defendant's IDOC, Wexford and their named employees
and agents  by forcing:g him to controll his diabetes by starvation and refusing to treat
his end stage advance Hep. C   Willfully and wantonly condemn him to one or more of the
following medically certain outcomes. e.i. death, heart attack, heart dise**se**,,strokes,
comas, liver cancer, liver disease, limb and digit amputations among many other things.
Not only do they give out effective insulin to diabetic, they also provide the cure/
treatment for Hep C. , but deny him medical treatments out of hand

183. On or about 3-11-19 Plaintiff asserts that Defendant Stevenson of Lake Land College called him to participate in Orientation and to sign up for courses. Plaintiff completed the enrollment forms and informed him that he would be needing accommodations in light of his blindness and that the least expensive **accommodations** could be made to the Culinary Arts Class. Also, the Illinois Dept. of Human Services would instruct them on how to outfit the class to accommendate the blind free of charge.(See Exhibit YY)

184. Plaintiff alleges that Defendant's Lake Land College and Stevenson have at least twenty two(22) campuses throughout Defendant IDOC Correctional Facilities and had at it's Dixon C.C. campus vacancies in it's Culinary Arts Class. Which with or without considerations for Plaintiff's blindness his status placed him at the top of the waiting list. Plaintiff was refused enrollment soley because of his blindness.

185. Plaintiff alleges that the Defendant's IDOC, Wexford, lake Land College, Baldwin, Nickalaus, Dr. Meeks, Dr. Zahtz, Dr. Lank, Dr. O'Brien, Dr. Ludford, Pasley, Hendrix, Blackburn, Johnson, Martens, Stevenson, Lt. Remmers, Lt. Gonzalos, Black Farias, Tuell, Mershon, Allen and Melvein ( "hereafter collectively Defendant's") envolvement in the aforementioned violations of his constitutional and civil rights are direct and ongoing.

186. Plaintiff avers that as of the filing of this complaint the conditions ( complained of, still exist.

---

## COUNT I
### CONSPIRACY

Defendant's infurtherance of customs, practices and policies designed to save on the cost and limit their responsibility to provide Plaintiff with Medical care, rehabilitation and education, while he is in the custody of the Illinois Dept. of Corrections. Did action separately and in concert violate the Due process and Equal Protection Clause of the U.S. Constitution, where they denied him fair and impartial hearing in his aprx. fifty(50) grievances and compalints in order to conceal the

the numerous violation of Plaintiff's constitutioaal and civil riths'while promoting
ſhid cost saving policies and practices.

1 through 186 Plaintiff  adopts and realleges ¶1 thru ¶186 as though fully set
ſforbh here;

⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕

## COUNT II

### VIOLATIONS OF AMERICANS WITH DISABILITIES AND REHABILATION ACTS

Defendant's violatſed Plaintiff's rights as a Blind American with Disabilities ⌐
secured ſnder the ADA and RA.

1 through 186 Plaintiff adopts and realleges ¶1 thru ¶ſ86 though fully set
forth here;

⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕

## COUNT III

### DELIBERATE INDIFFENCE TO SERIOUS NEEDS OF MEDICAL CONDITIONS

Defendat's have been and are deliberately indifferent to the needs of Plaintiff's
numerous serious medical conditions and their related medical conditions/complications.

1 throgh 186 Plaintiff adopts and realleges ¶1 thru ¶186 as though fully set
forth here;

⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕

## COUNT IV

### RETALIATION

Defendant's have been and are retaliating against Plaintiff for exercising his
constitutional right to seek redress through complaints and grievances of percieved
wrongful and unlawful acts.

1 through 186 Plaintiff adopts and realleges ¶1 ſhru ¶186 though fully set
forth here;

⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕⊕

## COUNT V
## WILLFUL AND WANTON CONDUCT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant's in doing the things alleged in this complaint acted deliberately, reckle4ssly, wantonly, willfully and maliciously. Causing Plaintiff to suffer extreme emotional distress and injury to him and the general public.

1 through 186 Plaintiff adopts and realleges ¶1 thru ¶186 though fully set forth here;

@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@@

WHEREFORE, Todd Fortier prays for a judgment in his favor in the Character and Amount to be determined by a Jury and;  such additional relief as the Court may deem just and proper.

Dated May 17, 2019

Respectfully Submitted

Todd Fortier, #N51882, pro-se

Dixon C.C.

2600 N. Brinton AV.

Dixon IL., 61021


## VERIFICATION

I am the Plaintiff, Todd Fortier, pro-se in this action. I the Affiant swear upon oath and declares taht I have read the foregoing complaint and hereby verify that the matters alleged therein are true upon my personal knowledge and I am willing to testify to same if call upon to do so. Pursuant to 28 USCS §§ 1746 I declare under penalty of perjury.

Dated May 17, 2019

Todd Fortier,#N51882

47